Requestor: Honorable David Axelrod, Commissioner New York State Department of Health Corning Tower Empire State Plaza Albany, New York 12237
Written by: Robert Abrams, Attorney General
Your counsel has requested our opinion as to the authority of the Department of Health to make inquiry into the background of an applicant seeking approval to operate health care facilities in the State of New York. Specifically, the question is whether the Department may consider various sources of information with regard to certain incidents which led to the applicant's arrest in Lynn, Massachusetts. The Massachusetts District Court dismissed all charges against the applicant in the interests of substantial justice.
In a previous opinion on this matter, we addressed whether a favorable disposition under section 160.50(2) of the Criminal Procedure Law includes favorable dispositions of out-of-state courts (Op Atty Gen No. 89-F9). Section 296 of the Executive Law prohibits employers and licensing authorities from making inquiry into arrests and criminal accusations which are terminated "in favor of . . . [an] individual, as defined in subdivision two of section 160.50 of the criminal procedure law". In addition, section 160.60 of the Criminal Procedure Law, enacted into law as part of the same bill which added section 296(16), provides that upon the termination of a criminal proceeding in favor of an individual the arrest and prosecution is deemed a nullity. We concluded that persons who receive favorable out-of-state criminal dispositions would be afforded the protection of the Executive and Criminal Procedure Laws only if the out-of-state disposition is comparable to a favorable disposition under New York law (ibid.). We further concluded that inasmuch as the Massachusetts court's order was not comparable to any favorable disposition under New York law, the provisions of the Executive and Criminal Procedure Laws did not apply (ibid.).
Subsequently, the Massachusetts court which had dismissed the charges against the applicant made supplemental findings. These findings recited several additional factors upon which the court based its decision to dismiss the charges. Your counsel has informed us that the Department of Health now considers the grounds for the dismissal of the charges — as set forth in the original judgment and supplemental findings — to be comparable to a favorable dismissal under New York law and, therefore, subject to section 296(16) of the Executive Law and section 160.60 of the Criminal Procedure Law.
The question now raised is whether, and to what extent, the Department may investigate the underlying incidents which led to the applicant's arrest. Specifically, counsel's office has asked whether the Department may: (a) consider the records of the Massachusetts court which dismissed the charges against the applicant; (b) interview witnesses to the incidents which led to the applicant's arrest, and consider their testimony; and (c) take and consider sworn testimony from the applicant as to his actions regarding the incidents in question.
For the reasons that follow, we conclude that neither the Executive Law nor the Criminal Procedure Law prohibits the Department from interviewing these witnesses and considering their testimony or from taking and considering the testimony of the applicant as to the incidents in question.
Section 296(16)[1] was added to the Executive Law in 1976 as part of a package of legislation which sought to protect the rights of persons arrested, or otherwise accused of committing a crime, yet who never were convicted. As the bill's sponsor noted:
 "sections of this bill provide that a criminal prosecution which does not result in a conviction shall not operate as a disqualification of any kind; and [make] it an unlawful discriminatory practice for any person or agency to inquire into or take adverse action in this regard" (Legislative Bill Jacket, L 1976, ch 877, June 16, 1976 letter of Sen. Joseph R. Pisani).
The legislation prohibits employers and licensing authorities from relying on, or acting unfavorably as a result of the mere fact of an arrest and/or prosecution. The protection was established by adding the following three provisions: section 160.50 of the Criminal Procedure Law, which defines a "favorable disposition", and establishes guidelines and procedures for sealing of certain records; section160.60 of the Criminal Procedure Law, which declares that criminal prosecutions which are terminated in favor of the accused (as defined in section 160.50)
 "shall be deemed a nullity and the accused shall be restored, in contemplation of law, to the status he occupied before the arrest and prosecution. The arrest or prosecution shall not operate as a disqualification of any person so accused to pursue or engage in any lawful activity, occupation, profession or calling";
and finally, section 296(16) of the Executive Law which prohibits employers and licensing authorities from inquiring about, or acting adversely as a result of an arrest or criminal accusation which was terminated in favor of the accused (again, as defined by section160.50 of the Criminal Procedure Law).
In Matter of Hynes v Karassik (47 N.Y.2d 659 [1979]), the Court of Appeals discussed the purposes of these provisions:
 "The statute serves the laudable goal of insuring that one who is charged but not convicted of an offense suffers no stigma as a result of his having once been the object of an unsustained accusation. That detriment to one's reputation and employment prospects often flows from merely having been subjected to criminal process has long been recognized as a serious and unfortunate by-product of even unsuccessful criminal prosecutions.
* * *
 "Consistent with the statute's remedial purpose, is its intended application to any criminal action or proceeding terminated in favor of the person accused. The broad definition thus encompasses an expansive class of dispositions, including acquittal and various specified dismissals and vacaturs, regardless of whether premised on grounds unrelated to guilt or innocence (see CPL 160.50, subd 2)" Matter of Hynes, 47 N.Y.2d at 662-663).
As noted, these provisions prohibit reliance on the mere fact of an arrest or accusation. They do not, however, prohibit inquiry into the facts underlying the arrest. In Matter of Skyline Inn Corp. v New YorkState Liquor Authority (44 N.Y.2d 695 [1978]), the State Liquor Authority (SLA) refused to renew the petitioner's license to sell alcoholic beverages after it learned that the petitioner had been arrested and indicted for a criminal charge which was later dismissed (Skyline,44 N.Y.2d at 696). The Court found that the Executive Law prohibited the SLA from predicating its disapproval of petitioner's renewal application on the mere fact that petitioner had been arrested and indicted for a criminal charge which was subsequently dismissed (ibid.). The Court stated, however, that the anti-discriminatory provisions of the Executive and Criminal Procedure Laws do not bar consideration of evidence of the wrongdoing which led to the arrest:
 "While it was permissible to consider the independent evidence of the conduct leading to the criminal charges against Harry Gordon, a shareholder, director and officer of petitioner, and although there was substantial evidence to support the findings of suffering or permitting prostitution at the licensed premises and of the likelihood that renewal would create a high degree of risk in the administration and enforcement of the Alcoholic Beverage Control Law, it was error to predicate disapproval of the renewal application, albeit in part, on the finding that Gordon was `arrested and indicted' for a criminal charge subsequently dismissed" (ibid.).
In Matter of Kenner v Coughlin (105 A.D.2d 1130 [4th Dept, 1984], lv den65 N.Y.2d 760 [1985]), the Court found that the testimony of police witnesses at an administrative hearing did not violate the Executive Law. In Kenner, a correctional officer had been dismissed following an incident where he fired a handgun at his wife, narrowly missing her (Kenner, 105 A.D.2d at 1130). Criminal charges based on the shooting were ultimately dismissed. The officer challenged his dismissal on the ground that it was based on the dismissed criminal charge, a violation of the Executive and Criminal Procedure Laws. The Court rejected petitioner's argument and dismissed the petition, noting as follows:
 "Inasmuch as petitioner's termination was based on acts of recklessness involving a firearm, not on the mere fact of his arrest, there was no violation of the Executive Law or of CPL 160.60 [citations omitted]" (Kenner, 105 A.D.2d at 1131 [emphasis supplied]; see also, Matter of K.C.B. Bakeries v Butcher, 144 A.D.2d 894, 896 [3d Dept, 1988]).
As Skyline and Kenner demonstrate, the administrative determination may not be based on the mere fact of an arrest or accusation. The provisions of the Executive and Criminal Procedure Laws, however, create no barrier to consideration of the underlying conduct which led to the arrest. InMatter of Lacey v Coughlin (97 A.D.2d 824, 825 [2d Dept, 1983]), it was found that "CPL 160.60 should not be read as foreclosing a governmental agency . . . from inquiring into an employee's misconduct in evaluating his fitness for employment". The Court concluded that the Commissioner "should be allowed to inquire into the facts surrounding the petitioner's arrest" (ibid.).
Accordingly, we conclude that the Executive and Criminal Procedure Laws permit the Department to make inquiry into the events which led up to the applicant's arrest. This includes the right to question the applicant as to what took place, and the right to question witnesses to the incidents.
Furthermore, the fact that persons served as witnesses in the criminal investigation and prosecution does not prevent their testimony from being considered by a licensing authority. In Matter of Hynes v Karassik
(supra), an attorney who had been the subject of a criminal investigation had been acquitted and the record of the proceedings were sealed pursuant to Criminal Procedure Law, § 160.50. The Committee on Grievances of the New York City Bar Association then sought to unseal the record to determine whether to seek sanctions against the attorney. The Appellate Division refused to allow the record to be unsealed, but found that tape recordings of conversations between the respondent and the operator of the nursing home, made by the police and introduced into evidence at the trial, were not part of the official record required to be sealed, and, therefore, could be relied on by the disciplinary committee:
 "a tape recording made in the course of an investigation does not become an official record required to be sealed under the section simply because it is marked in evidence as an exhibit in the course of a criminal trial" Matter of Hynes, 63 A.D.2d at 598, affd 47 N.Y.2d 659; see Matter of Anonymous v Grievance Committee for the Second and Eleventh Judicial Districts, 95 A.D.2d 763 [2d Dept, 1983]).
The Court of Appeals affirmed, finding that the tapes, "a key to the criminal prosecution itself" (47 N.Y.2d at p 655), were available to the committee.
Thus, the provisions of the Criminal Procedure Law and the Executive Law prohibit a licensing authority from considering the fact of an arrest or accusation terminating with a favorable dismissal and seal official records and papers of the court relating to the arrest and prosecution. The licensing authority may, however, consider evidence adduced during the criminal investigation and trial other than records sealed under section 160.50. A licensing authority is not barred from interviewing and considering the testimony of witnesses to the criminal proceeding or of the applicant who was the subject of criminal charges, as to the underlying incidents and events. The licensing authority may consider the above information in the context of a de novo inquiry into the character and fitness of the applicant. It may not, however, take into consideration the mere fact of the arrest or prosecution.
In that you have found that the Massachusetts District Court's dismissal is comparable to a New York dismissal, these principles apply to the arrest and other proceedings in Massachusetts.[2]
We conclude that the Executive and Criminal Procedure Laws permit a licensing authority to inquire as to the incidents underlying a favorable disposition of a criminal charge.
[1] Originally added as subdivision 14 (L 1976, ch 877), later renumbered (L 1980, ch 689).
[2] As we have previously informed counsel, this opinion in no way considers provisions of Massachusetts law. That is beyond the scope of an opinion of the Attorney General.