OPINION OF THE COURT
David B. Saxe, J.
When an Assistant District Attorney (ADA) publishes the contents of sealed Grand Jury testimony after a defendant has been acquitted, can the vindicated defendant sue the ADA for civil damages based on defamation or constitutional violations?
The events out of which this action arose began on March 17, 1992. Plaintiff Ronald Moore, a police officer with the New York City Police Department, was driving to work when, he asserted, four individuals threw objects at his automobile. He pursued them, and caught two of them (on-duty officers captured the others), and arrests were made. The two individuals detained by Moore alleged that Moore had assaulted them: one allegedly sustained four stitches in his head, and the other alleged a cut mouth. Moore was arrested and charged with assault in the second degree.
*838 In June 1992 defendant John Dormin was the Assistant District Attorney for the County of New York assigned to present the case against Moore to the Grand Jury. Moore chose to testify at the Grand Jury proceedings. An indictment was handed down by the Grand Jury on June 15, 1992. In March 1994, Dormin was the prosecutor in the criminal trial against Moore. Moore was acquitted of the charges by a jury on March 16, 1994.
On April 19, 1994, on the letterhead of the District Attorney for the County of New York, Dormin wrote a letter to the Deputy Commissioner for Internal Affairs of the New York City Police Department, Walter Mack, with a copy to the Deputy Director of the Civilian Complaint Review Board, Arthur Regan. The letter reads in pertinent part:
"Re: People v. Ronald Moore
"Ind. No. 5771/92
"This is to notify you that the above indictment was tried before a jury from' March 8, 1994 through March 16, 1994. On March 16, 1994, the above police officer was found not guilty of the two charges in the above indictment * * * While the jury did not find proof beyond a reasonable doubt for these charges, we found the officer committed numerous other violations of law and police department guidelines. We hereby decline to prosecute those violations. We write to inform you of the officer’s conduct and recommend that the Police Department seek an appropriate administrative remedy.
"The indictment arose out of the allegations of Kin Chan and three other teenage boys. The boys * * * were throwing various items * * * and struck the subject off-duty vehicle with a piece of mattress stuffing. The officer lost control of his car, gave chase and struck Kin Chan with the butt of his gun and punched Juan Pena. The jury found the officer not guilty of these two attacks * * *
"The officer affirmed the truth of statements in the Family Court proceeding and later testified under oath in the grand jury investigating this incident. Those reports and testimony are replete with false statements. The following is a summary of the officer’s most egregious fabrications.
"First, the officer reported and testified that the boys struck his truck with a large ten pound cobblestone. He claimed the cobblestone damaged his passenger door * * * These reports and testimony were false. The boys’ testimony that a soft object was thrown at the officer’s truck is corroborated by photos of the truck * * * since they show no damage to his truck door.
*839 "Officer Moore testified that the object that hit his car was a particular cobblestone * * * This assertion is false. The housing department police officer who found this cobblestone testified that the rock was found some six (6) feet in front of where the truck came to a stop, inside a wrought iron fence and some thirty (30) feet from where the subject officer testified the object hit his truck * * *
"Officer Moore claimed that Xin [szc] Chan resisted his arrest. He stated to the prosecutor in the Family Court proceeding and later testified in a deposition that Chan had resisted arrest by wriggling his body and flailing his arms. Later Moore testified that Chan had complied with his direction to put his hands up, then turned and rushed into the officer, knocking him to the ground. Clearly, the officer’s two statements contradict each other, and both statements are contradicted by numerous other witnesses.
"The officer made numerous other false statements under oath concerning his driver’s license status and auto insurance status on the day of the incident. The officer claimed that he was insured and licensed to drive on the day of this incident. In fact, the officer’s license to drive was suspended on the day of this incident and for some months before because of his failure to pay for his insurance * * *
"A further investigation into the officer’s line of duty injury claim appears warranted. The subject officer swore under oath twice that he was injured by Chan during the arrest and thereby lost 10 days of work * * * Given the testimony of witnesses that the officer never fell to the ground during the arrest, his claim on numerous police department reports that the injury to his knee from the auto accident was re-injured during the arrest smacks of an attempt to defraud the department by converting an off-duty injury into an on-duty one.
"Throughout the arrest process of the four boys and the subsequent investigation of their claims, this officer displayed a complete disrespect for truth and the requirements of law. These and his other false statements about this incident reveal him to be wholly unworthy to wear the uniform of a New York City Police Officer”.
It is this letter which forms the basis of this lawsuit. Moore contends that Dormin’s letter, stating that he committed perjury before the Grand Jury, was intended to malign Moore, destroy his reputation within the Police Department and to prevent him from continuing his employment. Moore alleges that as a result, he suffered substantial injury to his good name *840 and reputation and suffered great mental anguish, bodily-distress and illness. Moore is still employed by the Police Department.
Moore’s complaint asserts three causes of action: (1) defamation; (2) a violation of CPL 160.50 and Moore’s constitutional right of privacy, brought under 42 USC §§ 1983 and 1988; and (3) a violation of Moore’s right to privacy under the First, Fourth and Fourteenth Amendments of the United States Constitution in violation of 42 USC §§ 1983 and 1988. In his motion papers Moore also contends that Dormin violated CPL 190.25 (4) (a) and Penal Law § 215.70 and argues for the first time that violations of these State statutes also constituted violations of Moore’s constitutional rights.
Defendant John Dormin now moves (1) pursuant to CPLR 3211 (a) (7), to dismiss the complaint for failure to state a cause of action, and (2) pursuant to CPLR 3212, for summary judgment.
THE CONSTITUTIONAL CLAIMS
CPL 160.50
Moore’s second cause of action is based upon a claimed violation by Dormin of CPL 160.50 by using testimony from Moore’s sealed Grand Jury proceeding in drafting the April 19, 1994 letter, and that by violating this State statute, Dormin deprived Moore of his constitutional rights to privacy and liberty. The court therefore must initially determine whether Moore states a cause of action for deprivation of a right secured by the Constitution and laws of the United States (Martinez v California, 444 US 277, 284, reh denied 445 US 920 [1980]).
CPL 160.50 (1) states in pertinent part: "Upon the termination of a criminal action or proceeding against a person in favor of such person * * * unless the district attorney upon motion with not less than five days notice to such person * * * demonstrates to the satisfaction of the court that the interests of justice require otherwise, or the court on its own motion with not less than five days notice to such person * * * determines that the interests of justice require otherwise * * * the record of such action or proceeding shall be sealed and the clerk of the court * * * shall immediately notify the commissioner of the division of criminal justice services * * * that the action has been terminated in favor of the accused”.
For the purposes of this motion, the defendant does not take issue with the allegation that he violated this provision. *841 However, the mere violation of a State statute does not always rise to a violation of a constitutional right (Anderson v City of New York, 611 F Supp 481, 489 [SD NY 1985]). A State statute, however, "can create a constitutionally protected liberty interest if it contains explicit mandatory language creating a right, and if, as a precondition to the restriction of this right, the statute provides for the use of objective criteria rather than unfettered administrative discretion” (supra).
In Anderson v City of New York (supra), Anderson brought a section 1983 action alleging that the Police Department, and other defendants, violated his constitutional rights to liberty and privacy by using a photograph retained in violation of CPL 160.50* (supra, at 486). CPL 160.50, as discussed in Anderson, calls for the return to the accused of photographs and fingerprints at the end of a proceeding that was terminated in the accused’s favor. The United States District Court for the Southern District of New York found that CPL 160.50 "protects plaintiffs reputation and privacy interests by controlling the physical location of the photographs and fingerprints”, and that the statute mandates a court order sealing plaintiff’s records following an acquittal (supra, at 490). The Anderson court found that a violation of CPL 160.50 interfered with the plaintiffs constitutionally protected liberty interest in reputation or privacy, found in the Fourteenth Amendment (supra, at 488).
Following the determination of the Federal District Court in Anderson (supra), the New York State Court of Appeals addressed an application for suppression of in-court identification testimony made on grounds that the testimony was based upon the use of a photograph obtained from the sealed records of a prior criminal proceeding, in violation of CPL 160.50 (People v Patterson, 78 NY2d 711 [1991]). The Court found that "the right conferred by CPL 160.50 to have one’s photographs returned does not implicate fundamental constitutional interests or considerations” (supra, at 717 [emphasis added]). The Court therefore held that the violation of CPL 160.50 did not warrant suppression of the identification testimony (supra, at 718).
In an unreported decision, also in the context of suppression, the Southern District dismissed an action commenced under *842 42 USC § 1983 based upon a violation of CPL 160.50, and questioned the "continued vitality of Anderson following the New York Court of Appeals decision in Patterson” (Griffin v Kelly, 1994 WL 9670, 4 [SD NY, Jan. 11, 1994, Sand, J.]).
Then, in 1995, the Court of Appeals concluded that evidence obtained pursuant to an erroneous order unsealing the accused’s criminal records, subsequently used in a disciplinary hearing, need not be excluded from the hearing. In reliance upon its reasoning in Patterson (supra), the Court reiterated that a violation of CPL 160.50 did not implicate constitutional considerations (Charles Q. v Constantine, 85 NY2d 571, 575 [1995]).
Although the issue before this court is not whether evidence obtained in violation of a CPL 160.50 sealing order should be suppressed, this court must address whether a deprivation of constitutional dimension has taken place.
It bears emphasis that although the Court of Appeals in Patterson remarked that "an individual’s right to due process is violated by improper access to records sealed pursuant to CPL 160.50” (People v Patterson, supra, 78 NY2d, at 717), in the context of suppression, it concluded that no fundamental constitutional interests were implicated (supra). The next time the Court spoke on the constitutional dimension to a CPL 160.50 violation, it arrived at the same conclusion (Charles Q. v Constantine, supra).
I will not come to a contrary conclusion as to the plaintiffs rights in this case. The violation of CPL 160.50 as alleged in the complaint simply does not implicate any right of constitutional dimension here. Consequently, I conclude that the plaintiffs second cause of action must be dismissed.
Right to Privacy
Moore’s third cause of action, also brought under 42 USC § 1983, seeks compensation for Dormin’s violation of Moore’s right to privacy. Moore’s papers amplify this claim only by stating that there is no doubt that Dormin’s letter violated his constitutionally protected rights. The right to privacy, sometimes characterized as found in the First, Fourth, Fifth, Ninth or Fourteenth Amendment of the United States Constitution, involves at least two different kinds of interests: the individual interest in avoiding disclosure of personal matters, and the interest in independence in making certain kinds of important decisions (Whalen v Roe, 429 US 589, 598-600 [1977]). It appears that Dormin’s letter would fall into the first category.
*843 Moore has provided no evidence or argument establishing that a privacy interest protected by the Constitution was violated. He has only sought to establish a claim for injury to his reputation through his cause of action for defamation, and for violation of CPL 160.50 through the previously discussed section 1983 cause of action. As such, I perceive no factual basis upon which Moore’s third cause of action can be permitted to stand, and it is therefore dismissed.
As the court has also dismissed Moore’s second cause of action, his claim for attorneys’ fees under 42 USC § 1988 must be dismissed as well.
DEFAMATION
Moore alleges in his first cause of action that Dormin’s publication of the April 19, 1994 letter, which accused him of perjury, contained false, misleading and malicious statements about Moore, and resulted in damage to his reputation. Dormin contends that this cause of action must be dismissed because he is absolutely immune, or in the alternative, qualifiedly immune from Moore’s defamation claim.
The court notes that neither Dormin nor Moore submitted an affidavit based upon personal knowledge.
In determining the issue of prosecutorial immunity, the court considers whether the act complained of was within the scope of the prosecutor’s delegated discretion and whether the position entails making decisions of a judicial nature (Arteaga v State of New York, 72 NY2d 212, 216 [1988]). A prosecutor, as a quasi-judicial officer, is absolutely immune from damages for State law claims for official acts performed in the investigation or prosecution of criminal charges (Rodrigues v City of New York, 193 AD2d 79, 87 [1st Dept 1993]). A prosecutor is not absolutely immune, however, when knowingly acting in violation of law (supra, at 85-87).
Those official acts which are not of an investigative or prosecutorial nature, but can be characterized as administrative, may be shielded by qualified immunity, unless the act was made in bad faith or without a reasonable basis (Arteaga v State of New York, supra, 72 NY2d, at 216).
 Here, Dormin’s act of drafting and sending the letter referring the matter of Moore’s alleged perjury to the Police Department and the Civilian Complaint Review Board does not fall within the categories of investigation or prosecution. Nor may it be correctly characterized as a decision not to pros *844 ecute (which would also create an absolute immunity — see, Schloss v Bouse, 876 F2d 287 [2d Cir 1989]). Rather, it was at best an administrative decision to report his opinion of a police officer’s conduct at trial to the officer’s «superiors, which would shield him with qualified immunity. However, the determination of whether Dormin’s job normally entails such conduct and whether he is authorized to make such an administrative decision, so as to entitle him to a qualified immunity, is best left for the finder of fact.
Statements protected by a qualified privilege are not actionable, absent proof of malice; the plaintiff has the burden of demonstrating the existence of such proof — malice may not be presumed (see, Klein v Prial, 32 AD2d 925). The circumstances here support a possible inference of malice. Dormin’s letter can be viewed as more than a disinterested notice to another concerned party of his opinion that an employee gave perjured testimony. Furthermore, the possibility that Dormin intentionally and knowingly violated several statutes in doing so may well provide a basis to negate an otherwise available privilege (see, Rodrigues v City of New York, 193 AD2d 79, 87, supra).
For these purposes, the claimed violation of CPL 160.50 is already established. In addition, plaintiffs motion papers demonstrate similar violations of CPL 190.25 (4) (a) and Penal Law § 215.70.
CPL 190.25 (4) (a), as relevant to this matter, provides that Grand Jury proceedings are secret, and that no District Attorney may, except in the lawful discharge of his duties or upon written court order, disclose the nature or substance of any Grand Jury testimony. Like CPL 160.50, this statute seeks, in part, to protect the innocent from unfounded accusations if no indictment is returned, and from the stigma to the accused’s reputation which may flow from merely having been subjected to criminal process (Matter of Manners, 143 Misc 2d 945, 946 [Suffolk County Ct 1989]).
Penal Law § 215.70, as relevant to this matter, provides that a public prosecutor is guilty of unlawful jury disclosure (a class E felony) when he or she intentionally discloses, to another the nature or substance of any Grand Jury testimony, except in proper discharge of his or her official duties or upon written order of the court.
Despite my determination that these asserted statutory violations do not provide grounds for a constitutional claim, they may, as a factual matter, be relevant to a determination as to whether Dormin’s letter may be protected by a qualified privilege.
*845 For these reasons, the first cause of action will not be dismissed by virtue of the application of immunity at this time.
Accordingly, it is hereby ordered that Dormin’s motion to dismiss Moore’s complaint is granted to the extent that the second and third causes of action are dismissed; and it is further ordered that the remainder of Dormin’s motion is hereby denied.

 The section of CPL 160.50 at issue in Anderson (supra) was amended subsequent to that decision, so as to provide discretion to law enforcement to either destroy or return to the accused photographs or fingerprints. The sealing provision of CPL 160.50 at issue in this action remains mandatory.